**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SHEILA M. HAYES | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-05-3297 |
| | * | |
| PRINCE GEORGE'S COUNTY | * | |
| MARYLAND | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Sheila M. Hayes ("Plaintiff" or "Hayes") was hired by Defendant Prince George's County, Maryland ("Defendant" or "Prince George's County") as a Correctional Officer with the Department of Corrections located in Upper Marlboro, MD. Plaintiff has brought this employment discrimination action against Defendant alleging discrimination based on sex, sexual harassment/hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*. Currently pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [18]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, this Court will GRANT Defendant's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African-American woman, was hired as a Department of Corrections Correctional Officer on September 28, 1994. Plaintiff alleges that on August 4, 2004, during her break, Captain David Hall, a male Captain made a comment in a sexual nature stating that they

"needed to hang out." Plaintiff further contends that on August 16, 2004, Plaintiff was late coming into to work overtime and was subsequently yelled at by Captain Hall for not making roll call. Plaintiff claims that other employees, specifically other male employees, are not required to make roll call.[1] Plaintiff avers that although she was docked fifteen (15) minutes of overtime pay, that other similarly situated male employees were not docked pay when they similarly arrived late for overtime work.

As a result of Plaintiff's recurrent tardiness, the Defendant's Department of Corrections scheduled Plaintiff for disciplinary action before the Administrative Hearing Board. On December 2, 2004, the Board's Disciplinary Action Recommendation was issued. On December 13, 2004, Plaintiff filed a charge with the Equal Employment Office Commission ("EEOC") alleging hostile work environment, sexual harassment, and retaliation. Subsequently, Plaintiff received a right to sue letter from the EEOC. On December 9, 2005, Plaintiff filed a one count complaint against Defendant alleging unlawful discrimination in violation of Title VII. On January 18, 2006, the Defendant filed an Answer. Discovery has been completed and the dispositive motions deadline has passed. Currently before the Court is Defendant's motion to dismiss or, in the alternative, for summary judgment. The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

*Motion to Dismiss*

A court should deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[1] Plaintiff alleges that on August 16, 2004, Corporal Charles Downs, who Plaintiff claims is a similarly situated male employee, also arrived for overtime work late as he arrived at the same time as Plaintiff. However, Plaintiff contends that Corporal Downs's overtime pay, unlike Plaintiff's, was not docked.

Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Therefore, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

*Motion for Summary Judgment*

Where matters outside the pleadings are considered by the Court, however, Defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.P.

12(b), (c). Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party "to go beyond the pleadings" and show the existence of a genuine issue for trial, by way of affidavits, deposition testimony, or answers to interrogatories. *Id.* at 324; *see also Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

As an initial matter, because documents were attached to each of the party's briefs in support of their motions, the Defendant's motion should be treated as one for summary judgment. If, on a motion asserting a Rule 12(b)(6) defense, to dismiss for failure of the pleading to state a claim upon which relief can be granted, and matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *See Talbot v. U.S. Foodservice, Inc.,* 191 F. Supp. 2d 637, 639 (D. Md. 2002) (treating motion to dismiss as motion for summary judgment where the Court had to consider

"two items of evidence extrinsic to the pleadings"). Here, as the Court has consulted extrinsic documents that are not relied upon by the Plaintiff in her Complaint, the motion must be treated as a motion for summary judgment.

1.  Sexual Discrimination - Disparate Treatment

Under Title VII it is "an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... sex." 42 U.S.C. §2000 e-(a)(1). In a Title VII claim, the plaintiff must either:  1) present direct or circumstantial evidence or discriminatory animus; or 2) proceed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Hill v. Lockheed Martin Logistics Mgmt. Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004), *cert. dismissed 543 U.S. 1132 (2005); Diamond v. Colonial Life & Accidents Ins., Co.,* 416 F.3d 310, 318 (4th Cir. 2005). Regardless of the type of evidence the plaintiff offers, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Hill*, 354 F.3d at 286.

In this case, Plaintiff has not identified any direct evidence of discriminatory intent, and thus the *McDonnell Douglas* scheme of proof applies. To make out a *prima facie* case for disparate treatment under the *McDonnell Douglas* framework, Plaintiff must show that: 1) she is a member of a protected class; 2) she was subject to an adverse employment decision; 3) at the time of the adverse employment decision she was performing her job duties at a level that met her employer's legitimate expectations; 4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).

The Court, even after interpreting the facts in the light most favorable to the non-moving party, believes that Plaintiff has failed to establish sufficient facts to make out a *prima facie* case of sexual discrimination. Plaintiff, a female employee (member of a protected class), who was docked fifteen minutes of pay (subject to an adverse employment decision) failed to sufficiently present convincing evidence that she was performing her job duties at a level that met her employer's legitimate expectations. As Plaintiff was habitually late for work, she was not performing her job at a level that met Defendant's legitimate expectations and therefore fails to make out a *prima facie* case for disparate treatment under the *McDonnell Douglas* test. In fact, Plaintiff even admits that prior to the incident, she had been repeatedly tardy for roll call. (Hayes Deposition, p. 36 lines 3-10, line 11-14). Still, even assuming Plaintiff has established a *prima face* case, Defendant meets its burden to articulate a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's nondiscriminatory rationale for docking Plaintiff's pay was because she was fifteen minutes late, and not because of her sex. Furthermore, Defendant claims that it was merely following what was outlined in its disciplinary policy for disciplining employees who are tardy. Therefore, as Defendant has articulated its legitimate, nondiscriminatory rationale, the inference raised by Plaintiff's *prima facie* case is now extinguished. *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 507 (1993). As a result, Plaintiff now bears the burden to show that Defendant's proffered explanation for its action is not the true reason, but instead, is merely a pretext for discrimination. *Id.* at 507-08*; Hill*, 354 F.3d at 285; *McDonnell Douglas*, 411 U.S. at 804.

Here, as Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reason is "unworthy of credence," Plaintiff must offer "other forms of circumstantial evidence sufficiently probative of discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). In the instant

case, Plaintiff attempts to offer evidence of another employee's, Corporal Charles Downs, late arrival, who, unlike Plaintiff, went unpunished. Plaintiff suggests Defendant punished her, but not Downs, for coming to work late, the exact same thing that Corporal Downs did but was not disciplined for, and therefore is evidence of pretext for Defendant's discriminatory actions taken against her. However, Plaintiff's self-comparison to Corporal Downs is misplaced as Corporal Downs was not similarly situated to Plaintiff. Corporal Downs, unlike Plaintiff, was not habitually late, nor was his late arrival in question noticed, as Captain Hall claims that he did not see Downs arrive late. Plaintiff, on the other hand, alleges that Hall was in fact aware of Downs's late arrival, yet still did nothing.

The Court, even in viewing the facts in the light most favorable to Plaintiff and accepting that Plaintiff was treated differently than Downs, because she was docked pay where Downs was not, still finds that Plaintiff has failed to provide sufficient evidence to show that she and Downs were similarly situated. Merely because they were both late does not automatically make them both similarly situated. Here, as previously indicated, the record reflects that Plaintiff, unlike Downs, was habitually late and therefore they were not similarly situated. Furthermore, Defendant has set forth sufficient evidence of situations where male employees, who were habitually late and therefore similarly situated to Plaintiff, specifically Officers Gerald Smith and Jerry Owens, were docked pay just as Plaintiff was in accordance with Defendant's policy. Therefore, Defendant's production of evidence is enough to defeat Plaintiff's pretextual claim.

Title VII does not cover all "unfair and unprofessional" treatment, and does not "prohibit employment decisions based on other factors such as job performance, erroneous evaluations, personality conflicts or even unsound business practices." *Porter v. Nat'l Con-Serv, Inc.*, 51 F.

Supp. 2d 656, 659-60 (D. Md. 1998) (citing *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (4th Cir. 1998)). The Court takes into account facts alleged about Hayes's treatment but finds that, even assuming she made out a *prima facie* case, she has not produced sufficient evidence on this record to survive summary judgment on a disparate treatment claim.

2.)  Sexual Harassment - Hostile Work Environment

Title VII provides that it "shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] ... terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000 e-2(a). Sexual harassment gives rise to a claim of sex discrimination under Title VII. Plaintiff alleges that she was subjected to a hostile work environment. Under the hostile work environment theory, the harasser's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57 (1986). To state such a claim, she must show that: (1) the harassment was unwelcome, (2) the harassment was based on her sex, (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and created an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. *Causey v. Balaog,* 162 F.3d 795, 801 (4th Cir. 1998). Assuming, for the purposes of resolving this motion, that Hayes can satisfy the first two prongs of this test, she cannot satisfy the third and fourth prongs.

"[H]arassment is action under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create and abusive working environment." *Clark County School Dist. v. Breeden,* 532 U.S. 268 (2001) (internal punctuation and citations omitted). Indeed "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive

work environment - an environment that a reasonable person would not find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993). *See also Breeden*, 121 S.Ct. at 1510. To determine whether alleged harassment constitutes a hostile work environment, the Court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating or a mere offensive utterance, and (4) whether it reasonably interferes with [the] employee's work performance." *Smith v. First Union Nat. Bank*, 202 f.3d 234, 242 (4th Cir. 2000) (citing *Harris*, 510 U.S. at 23).

The alleged incidents of harassment in this case consist of an instance when Captain Hall had a conversation with her indicating that she needed to "hang out" or "kick it" with him and that "Sgt. Johnson must still be hitting that" (Pl. Comp ¶¶ 7 & 8, Hayes Depo., p. 14 lines 9-14, p. 15 lines 1-2); a situation in 2005 when Plaintiff was talking to Corporal Cumberbatch when a young lady approached and Corporal Cumberbatch responded, "got dame she is phat, while moving his hands closer to his private parts" (Exh. 1 at Response 11); another time when Corporal Santiago told Plaintiff that he liked women with big twins, referring to breasts, and started laughing (*Id.*); another instance when male officers left pornographic magazines on Post (*Id.*); and another time when Lieutenant Kozar brought pornography up on a computer and told Plaintiff to look at it (*Id.*). These incidents, even if taken in the light most favorable to the Plaintiff as true, are insufficient to form the basis for a hostile work environment claim. The Court cannot, on the record before it, conclude that the incidents of harassment that can be connected to her employment are sufficiently "severe and pervasive" to constitute a hostile work environment. *See Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994) (finding that the existence of a hostile environment cannot be predicated upon acts that

are isolated or genuinely trivial). While the Court does not condone what has been alleged by Plaintiff, the conduct that Plaintiff claims occurred did not occur with the requisite frequency and severity to trigger the law of hostile work environment. "Title VII is not a federal guarantee of refinement and sophistication in the workplace . . . ." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Furthermore, "Title VII's protections do not insulate one from either the normal day-to-day dissatisfactions and annoyances commonly arising in any workplace or from the sometimes unpleasantness of a surly, strict or even personally insufferable and demanding supervisor." *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 991 (D. Md. 1999).

Finally, Plaintiff has failed to allege that there is some basis for imposing liability on the employer. Plaintiff admits that she did not report the conversation that occurred between her and Captain Hall to anyone after it took place. (Hayes Dep, p. 18 lines 14-16). Instead, she waited nearly two months after the incident and after she was penalized for her tardiness to file an internal sexual harassment, hostile work environment, and retaliation claim. Plaintiff claims that prong four is satisfied because Defendant allowed Captain Hall to initiate disciplinary proceedings against her after she told Defendant about Captain Hall's advances. (paper no. 19 at 11). Since the record indicates that Plaintiff did not report the incident that occurred between herself and Captain Hall until October 4, 2004, the record contradicts Plaintiff's claim. Additionally, after Defendant was notified about Plaintiff's claims, it conducted an investigation into the matter. Where an employee is sexually harassed by a coworker, the employer may be liable only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prod., Inc.*, 335 F. 3d 325, 334 (4th Cir. 2003). Here, the Court finds that Defendant conducted an investigation, which was prompted by Plaintiff's complaint, and exercised reasonable care to

promptly correct any sexually harassing behavior. (Hayes Depo, pp. 74-75 lines 22-23, 92, & 1-23, p. 87 line 10-19; Crumbacker Aff. ¶¶ 11-16, 31-32, & 37-38, Attach B and E).  Accordingly, Defendant's motion to dismiss or, alternatively for summary judgment will be granted, insofar as it relates to Plaintiff's Title VII claim for hostile work environment.

3.  Retaliation

The *McDonnell Douglas* burden-shifting analysis discussed *supra*, applies to retaliation claims as well.  To establish a *prima facie* case of retaliation, the employee must show (1) that she engaged in a protected activity, (2) that her employer took an employment action against her that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action. *Hill*, 354 F.3d at 298; *Burlington norther & Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

Plaintiff provides two instances where she engaged in purported protected activities:  1) her rejection of Captain Hall's sexual advances on August 4, 2004; and 2) filing an internal oral complaint with regard to allegations involving sexual harassment, hostile work environment, and retaliation with Mary Crumbacker, the Personnel Section Chief and Departmental Workplace Harassment Coordinator, on October 4, 2004.  Although both instances meet the first *McDonnell Douglas* prong, Plaintiff fails to satisfy prongs (2) and (3) of the test.

Plaintiff fails to allege that Defendant took a cognizable adverse employmen action against her.  An adverse employment action is one which adversely affects the terms, conditions, or benefits of the plaintiff's employment. *See Munday v. Waste Management of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir. 1997), *cert denied*, 522 U.S. 1116 (1998); *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981) (recognizing that an adverse employment decision consists of actions such as hiring, granting leave,

discharging, promoting, and compensating). Plaintiff's contention that she was written up does not constitute an adverse employment action. *See Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 528-29 (D. Md. 2002) (finding that a discipline letter, "without evidence that the warning could lead to further disciplinary action, such as termination, does not constitute an adverse employment action[]"); *Nye v. Roberts,* 159 F. Supp. 2d 207, 213-14 (D. Md. 2001) (finding a written reprimand did not constitute an adverse employment action because ""[r]eprimands do not automatically affect the terms and conditions of employment"" and the reprimand did ""not state that it would lead to her termination or demotion or a decrease in pay"").

The third prong of the *prima facie* case requires that in order for Plaintiff to succeed, she must proffer evidence that there was a causal connection between the protected activity and the adverse employment action. A careful review of the record supports a finding that Defendant took an employment action against Plaintiff for habitually coming late to work, not for filing a grievance against anyone. Plaintiff arrived late for work on August 16, 2004 which ultimately led to an investigation regarding her alleged tardiness, disrespect, and insubordination. Although the investigation was initiated by Captain Hall, Lieutenant Ray Johnson was assigned to personally handle the investigation on August 24, 2004. On October 8, 2004, Plaintiff was given the opportunity to provide a written statement to Lieutenant Johnson to defend herself against the allegations. Plaintiff provided no indication that the allegations were rooted in sexual harassment. On December 3, 2004, Lieutenant Johnson notified Plaintiff that the allegations against her were sustained. Plaintiff received a final notice of that determination, including the $50.00 fine, on January 7, 2005.

Plaintiff's first complaint was not filed until October 19, 2004, more than two months after

the incident in which her overtime hours were docked for being late for roll call. She did not file a formal EEOC complaint until December 13, 2004, in which she alludes to two incidents of retaliation: 1) when she was docked fifteen minutes of overtime pay on August 16, 2004, and 2) when she was fined $50.00 and suspended for four days without pay. Since the fifteen minute overtime dock occurred before Plaintiff made her first complaint, no causal connection exists between the two incidents. Even if Plaintiff claims that the protected activity began when she shunned Captain Hall's advances, Captain Hall did not conduct the investigation. Therefore, the fifteen minute dock in overtime pay was in no way connected to any protected activity. Second, Lieutenant Johnson's investigation into Plaintiff's conduct began two months before Plaintiff's initial complaint. The $50.00 fine and four day suspension was merely a result of that investigation. Plaintiff has provided no evidence that the fine and suspension had any connection with her complaints. Therefore, the Court does not believe Plaintiff has made out a *prima facie* case fore retaliation.

## CONCLUSION

For all of the aforementioned reasons, the Court will GRANT Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. An Order consistent with this Memorandum Opinion will follow.

Date:   April 18, 2007                              /s/
                                            Alexander Williams, Jr.
                                            United States District Court Judge